IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ADWALLS MEDIA, LLC,               ) | CIVIL NO. 12-00614 SOM/BMK |
|                                   ) | |
|            Plaintiff,             ) | ORDER DENYING PLAINTIFF'S |
|                                   ) | MOTION FOR SUMMARY JUDGMENT |
|        vs.                        ) | AND DENYING DEFENDANT'S |
|                                   ) | MOTIONS FOR PARTIAL SUMMARY |
| AD WALLS, LLC, et al.,            ) | JUDGMENT AS TO COUNT II OF |
|                                   ) | THE COMPLAINT |
|            Defendants.            ) | |
| _____ ) | |

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTIONS FOR
PARTIAL SUMMARY JUDGMENT AS TO COUNT II OF THE COMPLAINT**

I.          **INTRODUCTION.**

        The court has before it a motion for summary judgment

filed by Plaintiff Adwalls Media, LLC ("Adwalls Media"), and

three motions for partial summary judgment filed by Defendant Ad

Walls, LLC ("Ad Walls"), all relating to Count II of the

Complaint.  Count II, the only remaining claim in the Complaint,

asserts a breach of contract claim.[1]  This court denies Adwalls

Media's motion for summary judgment as well as Ad Walls' three

motions for partial summary judgment.

        Motions relating to Ad Walls' Counterclaim and Third-

Party Complaint are addressed in a separate order.

II.         **FACTUAL BACKGROUND.**

        On or about March 17, 2010, Adwalls Media entered into

_____

        [1] This court previously dismissed Counts I, III, and IV of
Adwalls Media's Complaint.  See ECF No. 51.

a written Asset Purchase Agreement ("Agreement") with Ad Walls, an entity with a confusingly similar name.  The Agreement provided for Adwalls Media to purchase Ad Walls' rights in leases of properties in New York City, Boston, Baltimore, Philadelphia, and Washington, D.C., for $500,000.00.  <u>See</u> ECF No. 124-2, PageID #s 2048, 2050.  Specifically, Adwalls Media was purchasing all of Ad Walls' "right, title, and interest in, to, or arising from" various leases with parking garages.  The leases related to the right to install advertising displays in those parking garages.  <u>See</u> <u>id.</u>; ECF No. 124-3, PageID # 2068; ECF No. 161, PageID # 3733.  The parties state differing numbers of leases that they say are covered by the Agreement.  Many leases cover more than one garage, and the parties cite differing numbers of properties that they say are covered by the leases subject to the Agreement.  <u>See</u> ECF No. 124-1, PageID # 2046; ECF No. 124-3, PageID # 2068; ECF No. 161, PageID # 3733.

Adwalls Media contends that Ad Walls breached the Agreement by failing to effectively transfer or assign some of the leases covered by the Agreement.  The leases in issue were those that contained anti-assignment clauses.  According to Adwalls Media, Ad Walls failed to obtain lessor consents to the assignment of those leases.  <u>See</u> ECF No. 130-1, PageID # 2681.  Adwalls Media alleges that Ad Walls' failure to obtain lessor consents violated Article IX of the Agreement, which states in

2

part:

>Following the Closing date, each party hereto
>shall execute and deliver, or cause to be
>executed and delivered, such other documents
>and instruments, and will do and perform all
>other acts as may reasonably be required by
>such other party to evidence the validity of,
>or to perfect the full and proper performance
>of this Agreement. If any portion of the
>Purchased Assets is not capable of being
>assigned or transferred to Purchaser at the
>Closing Date as a result of a failure to
>obtain a required consent or approval, Seller
>shall (a) provide Purchaser with all of the
>rights and benefits of such Purchased Assets
>accruing after the Closing Date (until it is
>so assigned), and (b) use its best efforts to
>create any arrangement designed to provide
>such rights and benefits to Purchaser.

ECF No. 124-2, PageID # 2053; ECF No. 161, PageID # 3734.

Adwalls Media further says that Ad Walls' failure to effectively transfer or assign the leases prevented Adwalls Media from selling ads in the garages covered by the leases and from selling its business to a potential buyer, Seth Lippert. See ECF No. 130-1, PageID # 2677; ECF No. 161, PageID # 3733; ECF No. 189, PageID # 4981.

Both parties now seek summary judgment on Adwalls Media's breach of contract claim. Instead of filing one motion for summary judgment, Ad Walls filed three motions for partial summary judgment on the same date. See ECF Nos. 123, 125, 127. In one motion, Ad Walls argues that Adwalls Media cannot prove a breach of any contractual duty. See ECF No. 125. In another motion, Ad Walls argues that Adwalls Media cannot prove that Ad

Walls' alleged failure caused Adwalls Media's identified damages. See ECF No. 123. In the third motion, Ad Walls seeks summary judgment on its affirmative defenses of equitable estoppel, waiver, and consent/implied ratification. See ECF No. 127. Adwalls Media seeks summary judgment for itself, contending that it is the party entitled to relief as a matter of law, given Ad Walls' alleged breach of contract. See ECF No. 130.

**III.     STANDARD.**

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The movant must support his or her position that a material fact is or is not genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary

judgment must be granted against a party that fails to

demonstrate facts to establish what will be an essential element

at trial. See *id.* at 323. A moving party without the ultimate

burden of persuasion at trial--usually, but not always, the

defendant--has both the initial burden of production and the

ultimate burden of persuasion on a motion for summary judgment.

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102

(9th Cir. 2000).

The burden initially falls on the moving party to

identify for the court those "portions of the materials on file

that it believes demonstrate the absence of any genuine issue of

material fact." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors

Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp.*,

477 U.S. at 323). "When the moving party has carried its burden

under Rule 56(c), its opponent must do more than simply show that

there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586 (1986) (footnote omitted).

The nonmoving party must set forth specific facts

showing that there is a genuine issue for trial. *T.W. Elec.

Serv., Inc.*, 809 F.2d at 630. At least some "'significant

probative evidence tending to support the complaint'" must be

produced. *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv.*

Co., 391 U.S. 253, 290 (1968)); see also Addisu, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587); accord Addisu, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

All evidence and inferences must be construed in the light most favorable to the nonmoving party. T.W. Elec. Serv., Inc., 809 F.2d at 631. Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. Id. When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." Id.

**IV.      ANALYSIS.**

   **A.   Compliance with Local Rule 56.1.**

Ad Walls contends that Adwalls Media's concise statement should be stricken or disregarded because Adwalls Media fails to admit or dispute the facts in Ad Walls' three concise statements, in violation of Local Rule 56.1(b).  See ECF No. 190, PageID # 5022.  Although Adwalls Media's concise statement could have more clearly admitted or disputed the facts set forth in Ad Walls' concise statements, the court can determine from reviewing Adwalls Media's concise statement which facts are actually admitted and which are actually disputed.

All but one of the cases Ad Walls cites to support its request that Adwalls Media's concise statement be stricken or disregarded are from courts outside of this circuit.  The only case cited from within this circuit was decided in this district, but it involved circumstances far removed from those at issue here.  In Simms v. Univ. Health Alliance, Civ. No. 09-00295 DAE-KSC, 2010 WL 1712001 (D. Haw. Apr. 27, 2010), the court struck a supplemental concise statement of facts filed without leave of court on top of an already filed concise statement.  Id. at *4.  That circumstance alone distinguishes this case from Simms.

The cases Ad Walls cites in support of "strict compliance" with Local Rule 56.1 also note that courts should not

have to "scour the record looking for factual disputes" or act like "pigs, hunting for truffles buried in briefs." ECF No. 190, PageID # 5023-24 (internal quotation marks omitted). As explained later in this order, Adwalls Media's concise statement actually permits the court to locate evidence far more easily than Ad Walls' papers do. This court denies the request to strike or disregard Adwalls Media's concise statement.

Ad Walls alternatively asks this court to deem certain matters admitted by Adwalls Media pursuant to Local Rule 56.1(g). Local Rule 56.1(g) states that "material facts set forth in the moving party's concise statement will be deemed admitted unless controverted by a separate concise statement of the opposing party." Although Ad Walls contends that Adwalls Media must be deemed to have admitted the facts in Ad Walls' concise statements, entitling Ad Walls to summary judgment, it is clear from Adwalls Media's concise statement which facts are controverted. That is at the heart of what Local Rule 56.1(g) requires. Under these circumstances, the court will not treat all of Ad Walls' assertions as admitted and will not automatically grant Ad Walls summary judgment.

**B. The Court Denies the Ad Walls Motion for Partial Summary Judgment That Argues That Ad Walls Breached No Contractual Duty.**

Ad Walls contends that Adwalls Media cannot prove that Ad Walls breached the Agreement by failing to provide Adwalls

Media with lessor consents to the assignment of the leases.  See
ECF No. 125-1, PageID # 2180.  Ad Walls argues that the Agreement
contains no express requirement for lessor consents and that
Adwalls Media's reliance on Article IX of the Agreement is
misplaced.  See id., PageID #s 2180-81.  According to Ad Walls,
the Agreement required the transfer of its "right, title, and
interest in, to, or arising from" the leases, and such a transfer
was effectuated because an assignment of a lease with an anti-
assignment clause is a valid assignment between the assignor and
assignee even without a lessor's consent.  See id., PageID
# 2181.

Section 1.1 of the Agreement required Ad Walls to
transfer only its "right, title, and interest" in the leases.  Ad
Walls notes that it was not required by the express terms of the
Agreement to convey the leases themselves, much less the leases
without restriction, and the parties appear to agree that there
is no express obligation for Ad Walls to obtain lessor consents.
See ECF No. 126-11, PageID #s 2355, 2373.  Nor does the Agreement
include any express guarantee by Ad Walls that it held the leases
without restriction or that execution of the Agreement would not
violate the leases.

Given the above, Adwalls Media relies on the following
language in Article IX of the Agreement:

If any portion of the Purchased Assets is not
capable of being assigned or transferred to

9

> Purchaser at the Closing Date as a result of
> a failure to obtain a required consent or
> approval, Seller shall (a) provide Purchaser
> with all of the rights and benefits of such
> Purchased Assets accruing after the Closing
> Date (until it is so assigned), and (b) use
> its best efforts to create any arrangement
> designed to provide such rights and benefits
> to Purchaser.

ECF No. 126-2, PageID # 2232. According to Adwalls Media, leases with anti-assignment clauses were not capable of being assigned or transferred at the Closing Date because Ad Walls had not obtained lessor consents. Adwalls Media argues that this triggered an obligation on Ad Walls' part to use its best efforts to obtain lessor consents so that the leases with anti-assignment clauses could be effectively assigned. See ECF No. 187, PageID # 4910.

Ad Walls refers the court to authorities standing for the proposition that a lease with an anti-assignment clause can be effectively assigned to an assignee even in the absence of lessor consent. Adwalls Media claims there are authorities to the contrary.

At the outset, the parties present the court with a choice of law issue. Ad Walls argues that the assignability of a lease with an anti-assignment clause must be determined under the particular state law relevant to that lease. That is, according to Ad Walls, Hawaii law is inapplicable to a lease covering non-Hawaii properties and containing no Hawaii choice of law

provision.  Adwalls Media, by contrast, urges this court to consider Hawaii law.

This court begins by questioning whether it is being presented with truly legal questions.  Before considering what law applies to the leases, this court must examine the leases in issue.  Discerning where those leases are in the reams of paper submitted is no easy task, especially with respect to Ad Walls' submissions.  Ad Walls relies on summaries of leases, never submitting the actual leases or quoting the anti-assignment clauses.  See ECF No. 124-3, PageID #s 2068-75.  While claiming that it has cited case law from every state in which the properties subject to the leases are located, Ad Walls does not tie each lease with an anti-assignment clause to a particular state's law.

Unlike Ad Walls, Adwalls Media has at least identified actual leases it believes have anti-assignment clauses, referring the court to Exhibits 10A to 10L.  However, at least one lease, the L&R Group lease, is identified as containing a restriction but is not included in the record.  See ECF No. 180-8, PageID # 4547.  Adwalls Media explains that this lease was not produced by Ad Walls during discovery.  This leaves the court unable to even examine the lease provision whose effect the parties are fighting about.

Even the precise number of leases covered by the

Agreement is unclear.  Compare ECF No. 180-8 (Adwalls Media's statement that nineteen leases are at issue) with ECF No. 124-3 (Ad Walls' statement that eighteen leases are at issue).

At the hearing on the present motions, Ad Walls attempted to address the court's concerns about the facts in issue by agreeing to simply accept Adwalls Media's representation that Exhibits 10A to 10L represent the leases with anti-assignment clauses.  Ad Walls offered no proposal with respect to the missing L&R Group lease.

This court is as desirous as anyone of narrowing the issues in this case, but it is more than a little ironic that, having asked this court to strike Adwalls Media's concise statement, Ad Walls now seeks to ride on Adwalls Media's coattails with respect to exhibits!

Even if the court could proceed by examining at least the anti-assignment clauses in Exhibits 10A to 10L, that would still require the court to perform a guessing game to determine which state's law Ad Walls might be arguing is applicable to which lease.

At most, Ad Walls says that New York law applies to the Central Parking lease, Exhibit 10L, and Pennsylvania law applies to the Parkway lease, Exhibit 10A, because those leases include express provisions stating that the leases are governed by the laws of those states, respectively.  See ECF No. 191, PageID

# 5053, footnote 8.  This leaves it entirely to the court to "mix and match" case authorities cited by Ad Walls with most of the leases with anti-assignment clauses.  The court sees little reason that it should assume this task, which Ad Walls itself has declined to take the time to do.

Some of the other leases include governing law clauses, but several leases state that they are to be construed in accordance with the laws of the state in which the property is located.  Not every lease even mentions the subject of which state's law applies.

With respect to the leases referring to the laws of the state in which property is located, the applicable state is not always obvious because a lease may cover multiple properties. The parties do not agree on even the number of covered properties, much less their locations.  Ad Walls refers the court to a summary of the leases that suggests that only twenty-three properties are subject to leases with anti-assignment clauses. ECF No. 124-3, PageID # 2068.  The number twenty-three is puzzling, because Exhibits 10A to 10L appear to cover more properties.  Nor are the twenty-three properties identified as covered by either the Central Parking lease or the Parkway lease, the only leases Ad Walls explicitly ties to the law of particular states.  This court thus is left uncertain how to reconcile Ad Walls' oral offer to accept Exhibits 10A to 10L with Ad Walls'

written submissions.  For its part, Adwalls Media suggested at the hearing on the present motions that many more than twenty-three properties were affected by anti-assignment clauses.

The disarray in the presentation of the facts on which Ad Walls premises its "breach of contract" summary judgment motion causes this court to conclude that, regardless of whether Ad Walls might ultimately be entitled to prevail on its argument, it does not, on the motion before the court, meet its burden of establishing the absence of a triable issue and an entitlement to summary judgment as a matter of law on the ground presented.

Even if the record were clearer and cleaner, the court would not necessarily grant Ad Walls summary judgment as to Count II based on the argument that Adwalls Media cannot show any breach of contract.

This court is certainly not saying that Adwalls Media will have an easy time prevailing on Count II.  As Ad Walls points out, no express provision in the Agreement requires Ad Walls to obtain lessor consents.  In fact, there is evidence that such express provisions were discussed and discarded during contract negotiations, so that Adwalls Media should arguably have been on notice that Ad Walls was not required to obtain lessor consents.  Moreover, while Article IX of the Agreement sets forth what Ad Walls was to do if "any portion of the Purchased Assets is not capable of being assigned or transferred to Purchaser at

the Closing Date," Ad Walls' obligation arises under that language in Article IX only if the inability to assign or transfer is "a result of a failure to obtain a *required* consent or approval." (Emphasis added.) Thus, Adwalls Media must show that lessor consent is *required* before Adwalls Media may rely on an alleged failure by Ad Walls to perform under that particular portion of Article IX.

However, whatever difficulties Adwalls Media might face with respect to Count II, the argument Ad Walls makes may prove too much. Ad Walls appears to this court to be arguing that, in return for receiving $500,000, it was allowed to give Adwalls Media something that at least Adwalls Media is contending was or became entirely valueless. See ECF No. 174-1, PageID # 4105; ECF No. 175-1, PageID # 4135. Although Ad Walls says that it tried to help Adwalls Media succeed and that Adwalls Media failed because of its own ineptitude, Adwalls Media says that what it got was worthless for reasons unrelated to Adwalls Media's purported failings.

Ad Walls says that it only had to transfer its rights in leases and never had to even seek lessor consents, and that Adwalls Media was free to seek lessor consents for itself, as were other businesses that had not contracted with Ad Walls. But it is precisely because other businesses could also negotiate with the lessors (because the lessors had no obligation to do

business with Adwalls Media at all) that Adwalls Media is questioning what it received of value.

This court recognizes that Ad Walls did agree not to conduct certain forms of business in certain defined locations, ended its relations with its agent in the alleged expectation that Adwalls Media would perform that former agent's services for Ad Walls, and allowed Adwalls Media to use "Adwalls" in its name. These actions may well have been intended to benefit Adwalls Media. However, the noncompete benefit to Adwalls Media appears to be the same benefit available to competing business that had not just paid Ad Walls $500,000. Adwalls Media argues that Ad Walls ended its relationship with its agent for reasons unrelated to any expectation that Adwalls Media would replace that agent. See ECF No. 147-1, PageID # 3351. And the court cannot determine from the present record that the right to use "Adwalls" ended up carrying value.

It is not a court's job to rescue parties who enter into deals that turn out to be less profitable than hoped. But the law has developed a variety of breach of contract concepts such as "failure of consideration" to address situations in which, even if an agreement is supported by consideration at its inception, that consideration becomes worthless such that it cannot be said that the parties ultimately exchanged things of value. The court is by no means determining that Adwalls Media

may proceed on such a theory.  Such a matter has not been briefed, and may be inapplicable here.  The court is denying Ad Walls' breach of contract motion on other grounds.  The court ventures into the territory above only to posit that Count II may not be resolvable in a mechanical or technical fashion, which is what Ad Walls appears to be advancing.

For example, although the court need not reach Ad Walls' argument that Article IX should be construed against Adwalls Media because it was allegedly drafted by Adwalls Media, the court is concerned that Ad Walls cites that doctrine as if it leads inevitably to summary judgment for Ad Walls.  The doctrine is more nuanced than Ad Walls acknowledges.  Construction against the drafter is a rule of construction that courts apply only as a last resort.  Because application of such a rule may bind parties to something no party intended, courts usually struggle first to determine the parties' intent when reviewing ambiguous contract provisions.  Typically, it is when that intent cannot be determined that resort is had to construing language against the drafter.  See, e.g., BKCAP, LLC v. CAPTEC Franchise Trust 2000-1, 572 F.3d 353, 361 (7th Cir. 2009) (courts look to extrinsic evidence before construing an ambiguous contract against the drafter); Taylor v. Cont'l Grp. Change in Control Severance Pay Plan, 933 F.2d 1227, 1233-34 (3d Cir. 1991) ("[W]e do not adopt a rule that would construe ambiguities against the drafter without

first attempting to ascertain the intent of the parties.");
Record Club of Am., Inc. v. United Artists Records, Inc., 890
F.2d 1264, 1271 (2d Cir. 1989) ("Rules of construction such as
the principle that in certain circumstances a contract may be
construed adversely to the party that drafted it are principles
of last resort, to be invoked when efforts to fathom the parties'
intent have proved fruitless" (citations omitted)); Restatement
(Second) of Contracts § 206 cmt. a (interpretation of an
agreement against the drafter is appropriate "[i]n cases of doubt
. . . so long as other factors are not decisive").

Ad Walls' motion would have this court leap immediately
to construing language against Adwalls Media.  Ad Walls is
similarly cavalier in its approach to the first sentence of
Article IX, presuming without establishing that it refers to
ministerial matters only.  The court is unconvinced that the
record presently supports moving forward in this case by
delivering such absolute declarations.

In any event, as noted above, Ad Walls fails to meet
its burden as the movant of showing an entitlement to summary
judgment as to Count II based on Ad Walls' "no breach of
contract" theory.

**C.   The Court Denies the Ad Walls Motion for Partial
Summary Judgment That Argues That Adwalls Media
Does Not Show That Ad Walls Caused Damages.**

Ad Walls contends that Adwalls Media cannot show that

the alleged breach of the Agreement caused the damage that Adwalls Media complains about.  Ad Walls argues that market conditions, undercapitalization, and inexperience are the root causes of Adwalls Media's inability to sell advertisements in the parking garages covered by the leases, and that Adwalls Media's inability to sell its business to Seth Lippert rests on reasons other than the alleged breach, including the "ineptitude or untrustworthiness" of Adwalls Media's principal, James Blinn. See ECF No. 123-1, PageID #s 2003-05.

Ad Walls is not entitled to summary judgment on the issue of whether its alleged contract breach caused Adwalls Media's alleged damages.  Causation of damages is generally an issue of fact, and the record in this case reflects numerous disputed issues of fact.  Those disputes are evident from the competing evidence submitted by the parties.  Adwalls Media contends that the lack of lessor consents prevented it from selling advertisements and cites to deposition testimony by James Blinn stating that "without having the assignment and the consent of the garage, technically, we were not able to place [advertising] in those garages."  ECF No. 176-1, PageID # 4175; see also ECF No. 161-1, PageID # 3743, ¶ 34.  Adwalls Media also cites deposition testimony by Blinn explaining that the sale of its business to Seth Lippert was derailed because of the lack of lessor consents.  See ECF No. 174-1, PageID #s 4105-06.

Ad Walls, on the other hand, attaches a declaration by Ricardo Marques, the President of Marketing, Sales & Operations of Diesel Outdoor, the company with which Seth Lippert was affiliated, stating that the deal with Adwalls Media did not go through for reasons other than those Adwalls Media has identified.  See ECF No. 124-8, PageID #s 2164-65.[2]  In support of its contention that market conditions and Adwalls Media's own undercapitalization and inexperience were the causes of Adwalls Media's inability to sell advertisements, Ad Walls cites an interrogatory response by Adwalls Media stating that Adwalls Media did not sell any advertising in any of the properties covered by the Agreement "due to market conditions."  ECF No. 123-1, PageID #s 2013-14; ECF No. 124-5, PageID # 2084.  Ad Walls also relies on deposition testimony by James Blinn attributing Adwalls Media's failure to sell advertising despite its best efforts to a number of issues, including a bad economy, a weak product, and Ad Walls' bad reputation.  See ECF No. 124-6, PageID #s 2097, 2104, 2130, 2140, 2143-44.  The court cannot resolve these conflicts in the evidence on this motion for summary judgment.

Each party urges this court to disregard evidence

_____

[2] Although Adwalls Media objects to Ricardo Marques's declaration on hearsay grounds, Adwalls Media does not establish that anything contained in the declaration, which is based on Marques's personal involvement with Diesel Outdoor's negotiations with James Blinn, is inadmissible hearsay.

submitted by the other as inadmissible hearsay.  The court need not resolve here all such disputes.  Even assuming this court disregarded the material Ad Walls objects to, Ad Walls would not be entitled to summary judgment.  In considering Ad Walls' motion, this court construes all admissible evidence in the light most favorable to Adwalls Media and draws reasonable inferences in its favor.  See <u>T.W. Elec. Serv., Inc.</u>, 809 F.2d at 631.  Given that posture and the disputed material facts relevant to causation, summary judgment on causation is denied.

This court makes no credibility determinations and does not weigh conflicting evidence in deciding Ad Walls' summary judgment motions.  <u>Bator v. State of Hawai'i</u>, 39 F.3d 1021, 1026 (9th Cir. 1994).  Resolving the issue of what caused Adwalls Media's damages on the present record would require doing exactly that.

> **D.    The Court Denies the Ad Walls Motion for Partial Summary Judgment That Argues That its Affirmative Defenses Succeed.**

Ad Walls relies on three affirmative defenses: (1) equitable estoppel; (2) waiver; and (3) consent/implied ratification.  Summary judgment is not warranted based on any of these defenses.

Equitable estoppel "requires proof that one person wilfully caused another person to erroneously believe a certain state of things, and that person reasonably relied on this

erroneous belief to his or her detriment." <u>Maria v. Freitas</u>, 73
Haw. 266, 273 (1992).

Waiver is "generally defined as an intentional
relinquishment of a known right, a voluntary relinquishment of
some rights, and the relinquishment or refusal to use a right."
<u>Ass'n of Owners of Kukui Plaza v. Swinerton & Walberg Co.</u>, 68
Haw. 98, 108 (1985) (internal quotation marks omitted).

Implied ratification arises when a principal
"demonstrate[s] an intent to affirm, to approve, and to act in
furtherance of" an unauthorized contract made by an agent.
<u>Lockwood v. Wolf Corp.</u>, 629 F.2d 603, 609 (9th Cir. 1980)
(internal quotation marks omitted).

Summary judgment is precluded with respect to all three
defenses by questions of fact. For example, there are disputes
of material fact with respect to Adwalls Media's knowledge about
what Ad Walls was doing about lessor consents, both at the time
the Agreement closed and after that. Different inferences may
reasonably be drawn from Adwalls Media's conduct during those
periods.

Ad Walls' motion relies heavily on inferences drawn
from Adwalls Media's closing of the deal even after language that
would have explicitly supported its position on lessor consents
was removed from the Agreement. Contrary to Ad Walls' argument,
the implication that can be drawn from that conduct is unclear on

22

the present record.  Drawing all inferences in favor of Adwalls Media, the nonmoving party, the court could conclude that Adwalls Media wanted explicit provisions relating to lessor consents or restrictions on transfer, but may have accepted what it believed was an implicit requirement for lessor consents in order to move the deal forward.  Adwalls Media explicitly argues that it has always believed lessor consents were part of the Agreement.  <u>See</u> ECF No. 174-1, PageID # 4105; ECF No. 175-2, PageID # 4159.

Even if, as Ad Walls says, Adwalls Media's belief could be said to be unreasonable or belied by the language of the Agreement, doctrines like estoppel and consent include the requirement that the person being estopped or deemed to have consented have acted knowingly, willfully, or with some degree of consciousness going beyond mere mistake.  <u>See, e.g.</u>, <u>Freitas</u>, 73 Haw. at 273 (noting that equitable estoppel requires a person to have willfully caused another to have an erroneous belief).  A person might not always be deemed to have consented to something the person misunderstood.  Issues relating to Adwalls Media's knowledge and the implications that can be drawn from its conduct are not resolvable in Ad Walls' favor on its motion.

The same applies to Adwalls Media's decision to close the deal without receiving lessor consents at closing.  Although Ad Walls seeks to characterize that conduct as a waiver or as implied ratification, the contractual provision Adwalls Media

relies on explicitly contemplates the possibility of action *following* closing.

Nor does Ad Walls show how it escapes the provision in the Agreement specifically stating that the terms of the Agreement may only be waived by written instrument and that the "failure of any party at any time or times to require performance of any provision hereof shall in no manner affect the right of such party at a later time to enforce the same." ECF No. 129-2, PageID # 2501. Ad Walls' footnote citing to New York law for the proposition that "parties may waive such a no-waiver provision by a later course of conduct," ECF No. 127-1, PageID # 2457, in no way proves that Ad Walls is entitled to the relief it seeks on its waiver defense under Hawaii law. Ad Walls has the burden of proof on its affirmative defenses, and it does not meet that burden by simply asserting Adwalls Media's constructive knowledge of the lack of lessor consents, especially given the Agreement's requirement that any waiver be in writing and be express.

With respect to its "consent/implied ratification" defense, the only case Ad Walls cites is a Ninth Circuit case addressing whether a corporation's conduct bound it to an agreement by its agent. See Lockwood v. Wolf Corp., 629 F.2d 603, 609 (9th Cir. 1980). How that scenario relates to this case is unclear.

Ad Walls indicates that its "implied ratification"

24

defense is a kind of equitable estoppel defense. ECF No. 127-1,
PageID # 2462. Whether that is so or not, it appears that, if Ad
Walls is to prevail on an implied ratification or equitable
estoppel theory, Ad Walls has the burden of establishing that it
detrimentally relied on something Adwalls Media did. See
Lockwood v. Wolf Corp., 629 F.2d 603, 609 (9th Cir. 1980)
("Implied ratification can be by affirmative acts or by omission
to act, but ratification by silence or acquiescence requires
knowledge, and acceptance of the benefits from the contract or
prejudicial reliance by the other party."); Freitas, 73 Haw. at
273 (1992) ("The theory of equitable estoppel requires proof that
one person wilfully caused another person to erroneously believe
a certain state of things, and that person reasonably relied on
this erroneous belief to his or her detriment.").

　　　　Ad Walls contends that its detrimental reliance on
Adwalls Media's alleged indications that lessor consents were not
required and on Adwalls Media's implied ratification of the
nondelivery of lessor consents took the form of agreeing not to
sell advertising in certain areas for five years under the
noncompetition clause. See ECF No. 127-1, PageID #s 2456, 2464.
It is unclear, however, how the noncompetition clause relates to
Adwalls Media's alleged conduct. There is no indication in the
record that the noncompetition clause was entered into in
specific reliance on Adwalls Media's alleged indications that

lessor consents were not required, and conduct by Adwalls Media following the closing could not have induced Ad Walls to agree to the noncompetition clause. Even if Ad Walls did rely on Adwalls Media's alleged action or inaction, there is no evidence that the reliance was actually detrimental. At most, Ad Walls says it stopped selling advertisement for five years, but that is a detriment only if it otherwise would have sold advertisements at the designated locations, which is not clear. Even Ad Walls' claim that it entered into the Agreement expecting to receive from Adwalls Media services previously provided to Ad Walls by its former agent is a matter of dispute. <u>Compare</u> ECF No. 147-1, PageID # 3351 (Zimmerman's deposition testimony that Ad Walls terminated its former agent because it was making contracts and offers for ad placement that conflicted with the agreement Ad Walls had with the former agent) <u>with</u> ECF No. 160-3, PageID # 3632 (draft version of the Agreement requiring Ad Walls to terminate its former agent). The court cannot conclude that detrimental reliance is established.

### E. Adwalls Media's Motion for Summary Judgment is Denied.

Many of the same factual issues that this court has identified with respect to Ad Walls' motions for partial summary judgment on breach of a contractual duty and causation exist with respect to Adwalls Media's motion for summary judgment. Those disputed issues similarly preclude summary judgment in Adwalls

Media's favor.

Admittedly, in contrast to Ad Walls, Adwalls Media does offer copies of actual leases with anti-assignment clauses at Exhibits 10A to 10L. But even with those leases, Adwalls Media does not meet its burden of establishing the absence of a triable issue and entitlement to judgment as a matter of law. For one thing, Adwalls Media's presentation of the law is confusing and ultimately inconclusive. Adwalls Media does not show that, under applicable law, Ad Walls' assignment of leases to Adwalls Media without lessor consents was invalid and therefore a breach of the Agreement. To the contrary, Adwalls Media itself appears uncertain about what the law provides.

Thus, Adwalls Media says, without extracting or describing any policy or guiding principle from the case authorities it reviews, "Even in this jurisdiction, the Court does not necessarily follow the proposition that an assignment of a lease without the required consent of the lessor does not render the assignment invalid." ECF No. 194, PageID # 5116. Adwalls Media also says, again without attempting to reconcile what it views as diverging decisions, "California does not always view the validity of an assignment the same way when a required consent was not obtained prior to making an assignment." Id., PageID # 5117. Without suggesting reasons to follow particular courts, Adwalls Media says, "Some courts do not follow the

proposition that an assignment of a lease without the required consent of the lessor does not render the assignment invalid. Courts in Nebraska, New Jersey, Massachusetts and Illinois have treated assignments as ineffective where a required consent was not obtained prior to making the assignment." Id., PageID # 5114. Given Adwalls Media's lack of analysis and inconclusive statements of position, the court is left unpersuaded that Adwalls Media is entitled to prevail based on what is before the court.

The court is not asking Adwalls Media to overstate the clarity of the law. A party should certainly concede that there may be a split among authorities. But a party asking the court to adopt a position must give the court reason to do so.

While this court has the task of deciding questions of law, the court does not have the task of making any party's argument for it. Both Ad Walls and Adwalls Media leave it to this court to do much of what this court expects counsel to do. With respect to Adwalls Media's motion, this court concludes, as it concluded with respect to Ad Walls' motion, that Adwalls Media fails to carry its burden as a movant in seeking summary judgment as to Count II of its own Complaint.

V.    **CONCLUSION.**

All three of Ad Walls' motions for partial summary judgment are denied. See ECF Nos. 123, 125, 127. Adwalls

Media's motion for summary judgment as to Count II of the Complaint is also denied. <u>See</u> ECF No. 130.

The parties are directed to contact the Magistrate Judge within seven calendar days to schedule a settlement conference at the earliest date available on the Magistrate Judge's calendar.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 30, 2015.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

<u>Adwalls Media, LLC v. Ad Walls, LLC, et al.</u>; Civil No. 12-00614 SOM/BMK; ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT AS TO COUNT II OF THE COMPLAINT